**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By casbell at 10:19 am, Aug 22, 2019

ANDREW JACOB MURPHY,

       Plaintiff,

    v.

MARTY ALLEN, et al.,

       Defendants.

CIVIL ACTION NO.: 6:18-cv-81

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia,

filed a 42 U.S.C. § 1983 Complaint contesting certain conditions of his confinement.   Doc. 1.

The Court now conducts the statutorily required screening of Plaintiff's Complaint.   28 U.S.C.

§ 1915A.   For the following reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims

against all Defendants except Defendant Miguel, **DENY** Plaintiff *in forma pauperis* status on

appeal as to those claims, **DISMISS** Plaintiff's request for injunctive relief, and **DENY**

Plaintiff's Motions for Preliminary Injunctions, docs. 4, 6**.**   I **DENY** Plaintiff's Motion for

Document and Record at Government Expense, doc. 20.   However, I find that Plaintiff's

allegations that Defendant Miguel and an unidentified officer were deliberately indifferent to his

safety are not due to be dismissed at this time, and I **DIRECT** the United States Marshals

Service to serve a copy of Plaintiff's Complaint and this Order on Defendant Miguel.   I also

**ORDER** Plaintiff to file a supplement to his Complaint within 30 days of this Order identifying

the unnamed officer who Plaintiff told that he was contemplating suicide or providing enough

descriptive information about that officer to make service possible.   Plaintiff's failure to do so may result in the dismissal of any claims against this individual.

## BACKGROUND

Plaintiff claims that in early January 2018, after being threatened by other inmates and transferred to a segregated dorm at GSP, he cut his own arm, showed the wound to an unidentified prison guard, and told her that he was going to commit suicide.   Doc. 1 at 9.   The unidentified officer said she would get help and left.   Id.   Plaintiff waited about 20 minutes, but no one came to his cell.   Id.   Plaintiff then attempted to hang himself.   Id.   Defendant Sergeant Miguel found Plaintiff and cut him down.   Id.   Plaintiff next recalls waking up in the hospital. Id.   After receiving medical treatment, Plaintiff was transferred to a general population dorm. Id.

Plaintiff also claims that on January 22, 2018 while in dorm A-4, he was attacked and stabbed by several inmates following a confrontation regarding stolen property.[1]   Id. at 5. Plaintiff lost consciousness, and when he recovered, he told an officer assigned to the dorm that other inmates were trying to kill him.   Id. at 6.   Approximately 20 minutes later, Lieutenant Byron arrived and took Plaintiff to medical where he received treatment for his injuries from Doctor Oshpendin.   Id. Lt. Byron then attempted to take Plaintiff back to his cell, and when Plaintiff protested, Lt. Byron took Plaintiff to segregation dorm E-3 and wrote Plaintiff a disciplinary report.   Id.   At this time, Plaintiff also asked to be placed in protective custody. Id.

Plaintiff briefly returned to general population in another dorm, C-4, in March 2018.   A few hours after arriving, he was threatened again by inmates and notified Sergeant Laura

---

[1]      Plaintiff's timeline is not clear.   The Court cannot determine whether Plaintiff claims his suicide attempt occurred before or after the January 22, 2018 attack.

Keating, who took Plaintiff to segregation dorm E-4 and wrote Plaintiff a disciplinary report for refusing his assigned housing in dorm C-4.  Id.  Plaintiff subsequently received another disciplinary report from Officer Andrea Cox for refusing a roommate in his cell in dorm E-4. Id.  Sergeant Tarver then attempted to bring a roommate to Plaintiff's cell a few days later, and when Plaintiff refused to accept a roommate, he and Sergeant Tarver fought.  Id. at 7.  Plaintiff was then taken to medical and placed in a cell where he was eventually assigned a roommate. Plaintiff protested this and received another disciplinary report from Sgt. Tarver.  Id.  Plaintiff again asked to be placed in protective custody.  Id.

Plaintiff asserts that on March 28, 2018, while officers were passing out dinner trays, Plaintiff requested that Officer Tatum provide him with another dinner tray because another inmate told him Officer Tatum "spit in his breakfast[.]"  Id.  Officer Tatum refused to give him another tray, and Plaintiff later filed a grievance arising from this incident.  Id.  Plaintiff was then placed in Tier II confinement as a result of the previous disciplinary reports he received. Id.  As a result of these disciplinary reports, Plaintiff was denied his "state incentive" on July 6, 2018.  Id.  Plaintiff then told Sergeant Howard and Deputy Warden Adams about a derogatory comment Officer Preston made, as well as the denial of his incentive and the threat he will face when he is no longer in Tier II confinement.[2]  Id. at 8.

Plaintiff claims that other inmates continue to threaten his life and that they will kill him and his family once he leaves Tier II confinement.  Id.  He claims that he suffers mental stress and flashbacks due to his previous injuries.  Id. at 9.  Plaintiff further states that he is "on

---

[2]     Plaintiff's allegations are difficult to decipher, but it appears that he alleges that Officer Preston made the following comment to another inmate about Plaintiff: "[T]hat cracker better shut up or he want [sic] eat."  Doc. 1 at 8.

Mental Health Caseload" but has not seen the psychiatrist, Mrs. Magaha, in three and a half months, though he has seen a mental health counselor.[3]   Id.

Plaintiff requests that the inmates who assaulted him be charged criminally.   Id. at 10. Plaintiff also requests money damages against Defendants for "harassment, mental damage, physical damages, failure to protect[.]"   Id.   Plaintiff finally requests that his record be expunged of all disciplinary reports and that he be transferred to a different prison and held in protective custody for the remainder of his sentence.

After filing his Complaint, Plaintiff filed three motions which are currently pending before the Court.   Docs. 4, 6, 20.   The first motion requests that the Court grant Plaintiff a preliminary injunction and summary judgment and appoint him counsel.   Doc. 4.   This motion is two pages long and contains no factual or legal support.   In the second motion, Plaintiff again requests that the Court grant him a preliminary injunction and provides no factual or legal support for his argument.   Doc. 6.   Plaintiff's third motion is written on what appears to be a state court form used for requesting documents at government expense; however, the writing is illegible and what can be read is difficult to follow.   Doc. 20.   Plaintiff appears to request a preliminary hearing and states, "I'm currently on protective custody one man cell."   Id. at 2. He finally claims that he is facing criminal charges in Tattnall County State Court, arising from an incident where Plaintiff refused to accept a roommate and CERT officers were called.   Id. Plaintiff appears to complain about the force CERT officers used during this incident, saying that he was tasered and that he has been criminally charged in retaliation for the Complaint he filed

---

[3]        Plaintiff asserts, in what appears to be a supplement to his Complaint, that he believes prisons are illegally detaining and torturing women, children, and everyone he knows, including his family.   Doc. 1 at 14.   This statement does not appear connected to Plaintiff's claims in this case, and, even if it were, such a vague allegation would not be actionable.   The statement will not be addressed further.

with this Court.   <u>Id.</u>   Plaintiff claims that he needs "documents copys [sic] of filed letters,

motions for me to prove my innocense [sic] [.]"   <u>Id.</u>

### STANDARD OF REVIEW

Plaintiff brings this action *in forma pauperis*.   Doc. 10.   Pursuant to 28 U.S.C. § 1915A,

the Court must review a complaint in which a prisoner seeks redress from a governmental entity.

Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is

frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks

monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil

Procedure when reviewing a complaint on an application to proceed *in forma pauperis*.   <u>See</u>

Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . .

a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R.

Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set

of circumstances).   Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without

arguable merit either in law or fact.'"   <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002)

(quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

<u>Thompson v. Rundle</u>, 393 F. App'x 675, 678 (11th Cir. 2010).   Under that standard, this Court

must determine whether the complaint contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   A plaintiff must assert "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not" suffice.   Twombly, 550 U.S. at 555.   Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."   Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.   Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).   However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.   McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

## I.   Claims for Injunctive Relief

Plaintiff requests, both in his initial Complaint and in two subsequently filed motions, that the Court grant him injunctive relief related to the terms of his confinement.   Doc. 1 at 9; Docs. 4, 6.   In these documents, Plaintiff asserts that he must be transferred to a different prison and held in protective custody due to the threats he faces at GSP.   This relief would entail the Court granting an injunction as to three distinct components of Plaintiff's confinement: (1) transferring him to a different prison; (2) placing him in protective custody; and (3) housing

him in protective custody for the remainder of his sentence.   Plaintiff fails to state a claim for either preliminary or permanent injunctive relief as to any of these three conditions.

First, to the extent that Plaintiff claims he must be transferred to a different prison, he has failed to allege he faces any harm while held in protective custody at GSP.   An essential element for both a preliminary and a permanent injunction is the threat of an irreparable injury if the Court does not grant injunctive relief.   Glenn v. Williams, Case No. 5:17-cv-401, 2018 WL 6599111 at *3, (M.D. Ga. Oct. 26, 2018) (listing the elements for preliminary and permanent injunctions and finding plaintiff was not entitled to either form of relief).   Plaintiff contends he faces grave threats at GSP, but he alleges that those threats only exist when he is placed in general population or housed with another inmate.   Doc. 1 at 8.   Taking Plaintiff's Complaint as true, there is protective housing at GSP where he faces no danger of imminent harm. Accordingly, he is not entitled to an injunction ordering that he be transferred to another prison.

Second, to the extent Plaintiff claims he must be placed in protective custody, his claim is moot.   An issue is moot if it "no longer presents a live controversy with respect to which the court can give meaningful relief."   Christian Coalition of Fla. Inc., v. United States, 662 F.3d 1182, 1189 (11th Cir. 2011) (quotations omitted).   Plaintiff's February 25, 2019 filing with the Court indicates that he is currently in protective custody.   Doc. 20 at 2.   Because Plaintiff has already been granted this portion of his requested relief, the issue is now moot.

Third, to the extent Plaintiff claims he must be held in protective custody for the remainder of his sentence, even if the claim was cognizable, it is not ripe.   A claim is not ripe if it involves "contingent future events that may not occur as anticipated or indeed may not occur at all."   Thomas v. Union Carbide Agric. Products Co., 473 U.S. 568, 580–81 (1985) (quotations omitted).   Plaintiff has asserted that he is currently in protective custody and has not indicated

that he is due to be released from protective custody at any point.   Doc. 20 at 2.   Because

Plaintiff has not claimed that it is certain or even likely that he will be released from protective

custody, his request that the Court order that he be held in protective custody for the remainder

of his confinement is not ripe.

Because Plaintiff's allegations do not entitle him to either preliminary or permanent

injunctive relief, I **RECOMMEND** the Court **DISMISS** Plaintiff's claim for injunctive relief.   I

also **RECOMMEND** the Court **DENY** Plaintiff's Motions for Preliminary Injunctions.   Docs.

4, 6.

## II.     Claims for Damages Against GSP Staff

Plaintiff also names more than 10 GSP staff members as Defendants in his Complaint,

doc. 1 at 4, and requests damages for "almost losing my life the harassment, mental damage,

physical damages, [and] failure to protect[.]"   Doc. 1 at 10.   Plaintiff alleges he suffered

physical harm on two separate occasions while incarcerated at GSP: first, when he attempted

suicide; and second, when he was assaulted by inmates upon his return to general population.

He further alleges that GSP staff were deliberately indifferent to his safety by not placing him in

protective custody immediately following these events.   The Court finds that Plaintiff's claims

of deliberate indifference against Defendant Miguel and an unnamed GSP officer should not be

dismissed at this time, but the remainder of Plaintiff's allegations do not state a claim against any

other GSP Defendants and should be dismissed.

"The Eighth Amendment prohibits deliberate indifference to an inmate's health or

safety."   Smith v. Owens, 625 F. App'x 924, 927 (11th Cir. 2015) (citing Hope v. Pelzer, 539

U.S. 730, 737–38 (2002)).   However, a plaintiff must plead more than mere negligence to state a

claim for an Eighth Amendment violation.   Smalls v. Berrios, Case No: 3:06cv95, 2007 WL

1827465 at *5 (N.D. Fla. June 25, 2007).   A plaintiff must instead show: (1) an objective, serious risk of physical harm; (2) a subjective, deliberate indifference by defendant to that risk; and (3) causation.   Id. at *4; Alexander v. Barefield, Case No: 5:06cv22, 2007 WL 1655383 at*3–4 (N.D. Fla. June 7, 2007).   The second, subjective component is met where a defendant disregards a known, clear risk to a prisoner's safety.   Farmer v. Brennan, 511 U.S. 825, 835–37 (1994).   In the medical context, a "defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference."   Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Regarding Plaintiff's attempted suicide, Plaintiff asserts that in January 2018 he cut his arm and then showed the wound to an unidentified GSP officer, telling her he was suicidal. Doc. 1 at 9.   The officer said she would get help.   Plaintiff waited 20 minutes, and when no one arrived, he hanged himself.   Id.   Defendant Miguel found and cut down Plaintiff soon enough after his attempted suicide to prevent his death.   Id.   Plaintiff next recalls waking up in the hospital.   Id.

A delay in medical treatment may give rise to a constitutional violation, even if the delay is only a matter of hours.   McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). However, "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally permissible."   Id.   Additionally, a claim for deliberate indifference can arise when prison staff are aware that an inmate is suicidal but do not take appropriate action to ensure the inmate does not injure or kill himself.   Anderson v. Lee County, Case No. 3:08-cv-1022, 2010 WL 550995, at *6 (M.D. Ala. Feb. 11, 2010) (plaintiff successfully stated a claim for deliberate indifference where defendants did nothing for 20 minutes while an

inmate hung himself and a neighboring inmate was calling for help).   Plaintiff's medical need was pressing, and Plaintiff told the unidentified officer that he was feeling suicidal.   Doc. 1 at 9. Plaintiff then did not receive any aid for at least 20 minutes until Defendant Miguel arrived after Plaintiff had already attempted to commit suicide.   Given these allegations, the Court allows Plaintiff's claims for deliberate indifference against Defendant Miguel and the unidentified officer in their individual capacities to proceed.[4]   The Court **ORDERS** Plaintiff to file a supplement to his Complaint identifying the unnamed officer who Plaintiff told that he was contemplating suicide or providing enough descriptive information about that officer to make service possible within 30 days of this Order.   Plaintiff's failure to do so may result in the dismissal of any putative claims against this individual.

Regarding the alleged January 22, 2018 assault, Plaintiff states the assault occurred following his confrontation with another inmate he suspected of stealing his property.   Id. at 5. Plaintiff does not allege Defendants were aware of the threats he faced from other inmates until after he was assaulted.   It appears Plaintiff was threatened by inmates previously, but Plaintiff does not allege that the same inmates who threatened him also assaulted him on January 22, 2018 or that he informed Defendants of any threats before the assault.   Rather, Plaintiff informed Defendants of the threats and requested not to be placed in general population after the

---

[4]      Plaintiff does not indicate if he is attempting to assert claims against the GSP Defendants in their official capacities as well as their individual capacities.   However, any official capacity claims against the GSP Defendants are barred by Eleventh Amendment immunity.   Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.   Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).   Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendant is immune from suit under § 1983.   Id. at 71. Accordingly, the Court construes Plaintiff's Complaint as seeking relief from the GSP Defendants only in their individual capacities, and, therefore, Plaintiff's claims against Defendant Miguel and the unidentified officer will proceed only in their individual capacities.

January 22, 2018 assault.   Id. at 5–6.   Plaintiff does not allege Defendants were aware of the threat that he faced from inmates in dorm A-4.

A valid deliberate indifference claim requires that a "prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists . . . ."   Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).   Plaintiff does not describe any facts from which a prison official could draw an inference that Plaintiff was at risk of serious harm.   Plaintiff also alleges that he received medical treatment within 15 to 20 minutes of alerting a guard of his assault.   Doc. 1 at 5.   Therefore, Defendants treated Plaintiff reasonably promptly after they became aware of his injuries.   Accordingly, Plaintiff does not assert a viable claim that the GSP Defendants were deliberately indifferent to his safety regarding the January 22, 2018 assault.

Plaintiff's final basis for his claims concerns his request for placement in protective custody.   Plaintiff first requested that GSP staff place him in protective custody on the night of his assault when Lt. Byron attempted to take him back to the cell where he was normally assigned after Plaintiff received medical treatment.   Id. at 6.   Lt. Byron then took Plaintiff to a different dorm and placed him in a "lockdown cell" and proceeded to write Plaintiff a disciplinary report.   Id.   According to Plaintiff, he was held either in a medical cell or in a Tier II cell without a cellmate for the duration of the relevant period, aside from being placed in general population for a few hours on March 12, 2018.   Id.   Indeed, Plaintiff's primary concern seems to be not that he faced threats in Tier II, but rather what will happen to him when his "lockdown time is up[.]"   Id. at 8.   Based upon these facts, Plaintiff cannot say he faced an objective, serious risk of physical harm following the January 22, 2018 assault, as he spent

nearly all time after that assault in some form of segregated confinement.[5]   That confinement

may not have been in the form Plaintiff preferred, but he does not allege that the nature of the

confinement exposed him to a serious risk of physical injury.   Plaintiff, therefore, fails to state a

claim that the decision of the GSP Defendants not to place him in protective custody constituted

deliberate indifference to his safety.   I **RECOMMEND** the Court **DISMISS** Plaintiff's claims

against all GSP Defendants except Defendant Miguel and the unidentified officer.

### III.   Plaintiff's Disciplinary Reports

Plaintiff also requests that the Court order Defendants to expunge the disciplinary reports

that Plaintiff received when he refused to go to general population or accept a roommate.

Doc. 1 at 10.   Plaintiff contends these disciplinary reports resulted in him being denied a "state

incentive."   Id. at 7.   However, Plaintiff has no actionable interest under § 1983 in his state

incentive or disciplinary reports.

While Plaintiff is unclear as to the nature of the incentive the GSP Defendants denied

him, it appears he may be referring to a Performance Incentive Credit.   See Dilas v. Morales,

Case No. 418-116, 2018 WL 3979032 at *1 (S.D. Ga. July 16, 2018).   However, the loss of a

Performance Incentive Credit does not give rise to a claim under § 1983.   Id. at *2.   "[T]he

Georgia parole system does not create a liberty interest protected by the Due Process Clause,

since the substantial discretion reserved by the Georgia Board of Pardons and Parole belies any

claim to a reasonable expectation of parole."   Delgiudice v. Primus, 679 F. App'x 944, 948

(11th Cir. 2015).   The award of credits toward an inmate's parole date is discretionary, not

---

[5]      Regarding Plaintiff's brief return to general population on March 12, 2018, Plaintiff does claim
he was threatened by inmates when he placed in his general population cell.   Doc. 1 at 6.   However, he
fails to allege that Defendants were deliberately indifferent following this threat.   Officer Cox took
Plaintiff to another lockdown cell before writing him a disciplinary report for refusing housing.   Id.
Thus, Defendants removed Plaintiff from general population after he told them he had again been
threatened.

mandatory.   O.C.G.A. § 42-5-101(c).   A discretionary statute does not give rise to a liberty

interest.   See Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (citations omitted).

Because the statutes and guidelines underlying the Georgia parole system do not "contain any

language mandating the outcome that must be reached after application of the specified

procedures[,]" they afford too much discretion to state officials to create a legitimate expectation

of parole and an accompanying due process interest.   Sultenfuss v. Snow, 35 F.3d 1494, 1502

(11th Cir. 1994).   Additionally, Plaintiff does not claim that he was deprived adequate

procedural due process in the disciplinary proceedings themselves.   Wolff v. McDonnell, 418

U.S. 539, 557–58 (1974).   Because Plaintiff has no constitutional interest in his state incentives

or disciplinary reports, I **RECOMMEND** the Court **DISMISS** this claim.

## IV.    Plaintiff's State Court Prosecution

A number of Plaintiff's recent filings relate to his apparent state court prosecution in

Tattnall County, Georgia.   Docs. 20, 22.   While Plaintiff's filings are difficult to decipher, it

appears that this state court prosecution is connected to an altercation Plaintiff had with an

officer after telling the officer he could not have a roommate.   Doc. 20 at 2.   In one filing,

Plaintiff requests copies of documents he filed in this case so that he may use them in his defense

in the Tattnall County criminal proceedings.   Id.   In a second filing, Plaintiff requests copies of

all grievance reports he filed at GSP, all his medical records, and video footage of certain

incidents occurring at the prison.   Doc. 22 at 3.

As to Plaintiff's requests for copies of documents he has filed in this case, Plaintiff is

entitled to these copies but must pay for them.   A federal statute sets forth the fees that the Clerk

of Court charges for copies of court documents.   28 U.S.C. § 1914.   That fee is $0.50 per page.

Accordingly, to the extent that Plaintiff moves the Court to provide those documents to Plaintiff

without prepayment, that Motion is **DENIED**.   Doc. 20.   However, the Court **DIRECTS** the Clerk of Court to provide Plaintiff with an estimated cost of obtaining a copy of all of his filings. Plaintiff may then obtain those copies by pre-paying for them.

Second, as to Plaintiff's request for various records within the control of Defendants, the Court **DENIES** that request at this time.   As discussed above, Plaintiff has failed to state a claim against Defendants in this case, aside from Defendant Miguel and the unidentified officer.   As to those individuals, civil discovery in this case is not warranted or appropriate until they have been served, or in the case of the unidentified officer, identified.   Plaintiff may pursue discovery from those individuals at the appropriate time.   Moreover, if Plaintiff seeks records for his defense in that Tattnall County criminal proceeding, he must seek to obtain them through other means; the Court will not compel Defendants in this case to produce documents for use outside of these proceedings.   Accordingly, to the extent that Plaintiff's Request for Production of Documents, doc. 22, is construed as a motion, the Court **DENIES** that Motion at this time.

## V.      Claims Against Other Inmates

Plaintiff names as Defendants in this action several inmates that he asserts assaulted him on January 22, 2018.   Doc. 1 at 6.   Plaintiff also names as Defendants Matthew Traywick, an inmate who was involved in some altercation with Plaintiff on March 21, 2018, <u>id.</u> at 7, and Kevin Exum, an inmate who Plaintiff identifies as a Defendant but against whom he does not make any factual allegations.   <u>Id.</u> at 4 . Plaintiff requests that these inmates be charged criminally.[6]   Doc. 1 at 10.   The Court cannot initiate criminal charges against the other inmates or order that they be charged.   First, Plaintiff, as a private citizen, has no legal interest in the prosecution or non-prosecution of these Defendants.   <u>Otero v. U.S. Attorney Gen.</u>, 832 F.2d

---

[6]      Plaintiff does not assert any discernible civil claims against the inmate-Defendants or indicate that he seeks monetary damages from them.   Doc. 1 at 10.

141, 141 (11th Cir. 1987).   That power instead rests with the state and is executed by

prosecutors.   Second, the Court cannot usurp that prosecutorial discretion by ordering the state

to initiate a prosecution.   Id.   Accordingly, the Court cannot initiate criminal proceedings or

order the initiation of criminal proceedings against the inmate-Defendants in this case.

**VI.     Leave to Appeal *in Forma Pauperis***

If the Court adopts this recommendation. the Court should also deny Plaintiff leave to

appeal *in forma pauperis* as to any dismissed claims.[7]   Though Plaintiff has not yet filed a

notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.

Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or

after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is

not taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).   Good faith in this

context must be judged by an objective standard.   Busch v. County of Volusia, 189 F.R.D. 687,

691 (M.D. Fla. 1999).   A party does not proceed in good faith when he seeks to advance a

frivolous claim or argument.   See Coppedge v. United States, 369 U.S. 438, 445 (1962).   A

claim or argument is frivolous when it appears the factual allegations are clearly baseless or the

legal theories are indisputably meritless.   Neitzke v. Williams, 490 U.S. 319, 327 (1989);

Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).   An *in forma pauperis* action is frivolous

and not brought in good faith if it is "without arguable merit either in law or fact."   Napier v.

Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085,

403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[7]     A certificate of appealability is not required in this § 1983 action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.   Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to any dismissed claims.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against all Defendants except Defendant Miguel, **DENY** Plaintiff *in forma pauperis* status on appeal as to those claims, **DISMISS** Plaintiff's request for injunctive relief, and **DENY** Plaintiff's Motions for Preliminary Injunctions, docs. 4, 6**.**   I **DENY** Plaintiff's Motion for Document and Record at Government Expense, doc. 20.   However, I find that Plaintiff's a claim against Defendant Miguel and an unidentified officer for deliberate indifference is not subject to dismissal at this time, and I **DIRECT** the United States Marshals Service to serve a copy of Plaintiff's Complaint and this Order on Defendant Miguel.   I also **ORDER** Plaintiff to file a supplement to his Complaint within 30 days of this Order identifying the unnamed officer who Plaintiff told that he was contemplating suicide or providing enough descriptive information about that officer to make service possible.   Plaintiff's failure to do so may result in the dismissal of any claim against this individual.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections

must be served upon all other parties to the action.   The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.   The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

## REMAINING CLAIMS AND DEFENDANTS

As stated above, Plaintiff's deliberate indifference claim against Defendant Miguel and the unidentified officer who received Plaintiff's suicide threats shall proceed.   I **ORDER** Plaintiff to file a supplement to his Complaint within 30 days of this Order identifying the unnamed officer who Plaintiff told that he was contemplating suicide or providing enough descriptive information about that officer to make service possible.   Plaintiff's failure to do so may result in the dismissal of any claims against this individual.

The Court provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned **DIRECTS** that service be effected by the United States Marshal.   Fed. R. Civ. P. 4(c)(3).   In most cases, the

marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons.   Fed. R. Civ. P. 4(d); Local R. 4.7.   Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.   Fed. R. Civ. P. 4(d)(2).   Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date that the marshal sent the request for waiver.   Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.   Fed. R. Civ. P. 30(a)(2).   Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer.   Local R. 26.1.   Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.   As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any.   Defendants shall present such questions to the witness seriatim during the deposition.   Fed. R. Civ. P. 30(c).

<u>**INSTRUCTIONS TO PLAINTIFF**</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorney, a copy of every further pleading or

other document submitted for consideration by the Court.   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel.   Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."   Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.   Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case.   For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 et seq.   The discovery period in this case will expire 140 days after the filing of the last answer.   Local R. 26.1.   Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.   Id.   Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.   Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.   See Fed. R. Civ. P. 33.   Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.   Interrogatories are not to contain more than 25 questions.   Fed. R. Civ. P. 33(a).   If Plaintiff wishes to propound more than 25 interrogatories

to a party, Plaintiff must have permission of the Court.   If Plaintiff wishes to file a motion to

compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for

Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he

should also file a statement certifying that he has contacted opposing counsel in a good faith

effort to resolve any dispute about discovery.   Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.   If Plaintiff

loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard

cost of fifty cents ($0.50) per page.   **If Plaintiff seeks copies, he should request them directly**

**from the Clerk of Court and is advised that the Court will authorize and require the**

**collection of fees from his prison trust fund account to pay the cost of the copies at the**

**aforementioned rate of fifty cents ($0.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of

prosecution.   Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate.

Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and

permit his deposition to be taken and shall answer, under oath or solemn affirmation, any

question which seeks information relevant to the subject matter of the pending action.   Failing to

answer questions at the deposition or giving evasive or incomplete responses to questions will

not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record"

directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.

A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is

required to prepare and file his own version of the Proposed Pretrial Order.   A plaintiff who is

incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both.   Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.   "Failure to respond shall indicate that there is no opposition to a motion."   Local R. 7.5.   Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion.   Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.   Local R. 7.5, 56.1.   The failure to respond to such a motion shall indicate that there is no opposition to the motion.   Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.   Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.   That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.   Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.   Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against

Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA